**UNITED STATES of America**

v.

**Emmett Floyd THROWER.**

**Crim. No. 76–488.**

United States District Court,
E. D. Pennsylvania.

Nov. 29, 1977.

because the policy as a whole was allegedly limited to pleasure and business uses and industrial aid.

David W. Marston, U. S. Atty., William Winning, Asst. U. S. Atty., Philadelphia, Pa., for plaintiff.

Nino V. Tinari, Philadelphia, Pa., for defendant.

## OPINION

FOGEL, District Judge.

Following a nonjury trial, this Court found defendant Emmett Thrower guilty of distribution of methamphetamine, possession with intent to distribute methamphetamine, and conspiracy to distribute methamphetamine, in violation of federal drug laws, 21 U.S.C. §§ 841(a)(1), 846. Thrower has appealed his conviction.

During the pretrial stages of this case, we denied without written opinion certain pretrial motions submitted by Thrower. Accordingly we will at this juncture fully set forth for the record the grounds for our denial of those motions.

## I. PROCEDURAL HISTORY OF THE CASE

Defendant Thrower and two other individuals, Charles Alexander and Vera Davis, were charged in a seven-count indictment with violations of federal statutes governing the distribution and possession of methamphetamine, a Schedule II non-narcotic controlled substance. Vera Davis pleaded guilty to Count I (charging her with distribution of methamphetamine, 21 U.S.C. § 841(a)(1)), and to Count VII (charging her with conspiracy to distribute methamphetamine, 21 U.S.C. §§ 846, 841). Both Thrower and the remaining co-defendant, Alexander, waived their right to a jury trial and were then tried by the Court.

We found defendant Thrower guilty of four counts: Count II, charging distribution of methamphetamine, 21 U.S.C. § 841(a)(1); Count III, charging distribution of methamphetamine, 21 U.S.C. § 841(a)(1); Count V, charging possession with intent to distribute methamphetamine, 21 U.S.C. § 841(a)(1); and Count VII, charging conspiracy to distribute methamphetamine, 21 U.S.C. §§ 841, 846.

Defendant Alexander was convicted on two counts: Count IV, charging him with aiding and abetting the distribution of methamphetamine, 18 U.S.C. § 2, 21 U.S.C. § 841; and Count VI, charging him with possession of methamphetamine, 21 U.S.C. § 844(a). On two other counts, Alexander was acquitted; namely, Count V, charging him with possession with intent to distribute methamphetamine, 21 U.S.C. § 841(a)(1), and Count VII, charging him with conspiracy to distribute methamphetamine, 21 U.S.C. §§ 841, 846.

During the trial, both counsel for Thrower and counsel for Alexander stated that they would not request specific findings of fact; therefore, our findings as to each defendant were general findings, in accordance with the requirements of F.R.Crim.P. 23(c).

### A. Pretrial Motions

Prior to trial, certain motions were filed by defendant Thrower and by the Government; no pretrial motions were submitted by defendant Alexander. Defendant Thrower filed three motions: (1) a Motion for a Bill of Particulars; (2) a Motion to Compel Election Between Substantive Counts and the Conspiracy Count; and (3) a Motion to Suppress Evidence. The Government filed only one motion: A Motion for the Use of Tape Recordings and Transcripts of Consensually Monitored Conversations.

On February 8, 1977, we heard argument in open court on the pending motions, and we conducted an evidentiary hearing as to the issues raised by defendant Thrower's Motion to Suppress Evidence. At that time we denied defendant Thrower's Motion for a Bill of Particulars;[1] we also denied his Motion to Compel Election Between Substantive and Conspiracy Counts.[2] After hearing testimony directed

---

1. In response to defendant Thrower's Motion for Bill of Particulars, the Assistant U. S. Attorney, by his letter of December 15, 1977, furnished counsel for Thrower with all the information which defendant was seeking by way of a bill of particulars. At the hearing held on February 8, 1977, we inquired of defense counsel as to whether the Motion for Bill of Particulars was therefore moot; counsel informed us that the letter furnished the information previously sought. Consequently, we denied the Motion for a Bill of Particulars as moot, without objection from the defendant. (Notes of Testimony, February 8, 1977, pp. 4–5).

2. In his Motion to Compel Election Between Substantive Counts and Conspiracy Count, defendant Thrower argued that we should force the government to proceed against Thrower under either the substantive counts of the indictment (Counts II; III and V), or under the single conspiracy count (Count VII). The thrust of defendant's argument was that a jury would be unable to compartmentalize the evidence on the conspiracy count, and that any verdict on the substantive counts might be tainted.

We rejected this argument. Conspiracy, under 21 U.S.C. § 846, is a distinct and separate offense from distribution, or from possession with intent to distribute, under 21 U.S.C. § 841(a)(1). The offenses have different essential elements, and the Government may charge both offenses and proceed to trial on both. See, *United States v. Umentum*, 401 F.Supp. 746, 750 (E.D.Wis.1975) affirmed, 547 F.2d 987 (7th Cir. 1976). *Since defendant Thrower had*

to the Motion to Suppress Evidence, we took that motion under advisement.

We also reserved our decision on the Government's Motion for the Use of Tape Recordings and Transcripts of Consensually Monitored Conversations; since that motion was subsequently withdrawn by the Government, a decision on the merits of the Government's Motion was never required.

On March 9, 1977, we made our findings of fact of record denying defendant Thrower's Motion to Suppress.

### B. Post-Trial Motions

Following our adjudication of guilt, which we made on March 11, 1977, defendant Thrower filed a timely Motion for New Trial and/or Arrest of Judgment. We denied that Motion, for the reasons set forth in our Memorandum and Order of April 21, 1977,[3] and then sentenced Thrower to four concurrent terms of imprisonment of ten years on each of the four counts, and to four concurrent four year special parole terms on each of the counts.

After the period for appeal had expired, defendant Thrower submitted a Motion to File an Appeal Out of Time. We granted that motion, for the reasons expressed in our Memorandum and Order of May 19, 1977, *United States v. Thrower*, 431 F.Supp. 892 (E.D.Pa.1977).

After carefully reviewing the entire record in this case we believe that only one of our rulings requires any further comment at this stage; namely, our denial of Thrower's Motion to Suppress Evidence.

### II. DENIAL OF DEFENDANT THROWER'S PRETRIAL MOTION TO SUPPRESS

In his pretrial Motion to Suppress Evidence, defendant Thrower requested the suppression of the following evidence: *first*, the methamphetamine and drug paraphernalia found by government agents in the trunk of a Cadillac automobile; and *second*, the envelope containing $1800, seized from Thrower during a search of his person following his arrest conducted at the Federal Drug Enforcement Administration (D.E.A.) Headquarters, in Philadelphia. As to each type of evidence, Thrower claimed that the evidence was obtained in violation of the Fourth Amendment's ban on unreasonable searches and seizures. No other issues were raised by the motion to suppress.

Following the factual hearing held on February 8, 1977, we took the motion under advisement, and we made our findings of fact, pursuant to F.R.Crim.P. 12(e), on March 9, 1977. Those findings were detailed and extensive, and are set forth at pages I–4 through I–12 of the notes of testimony of March 9, 1977. We see no need to restate them; a brief reference to the essential factual context within which the motion was considered and decided suffices.

not persuaded us that a properly instructed jury would be unable to relate evidence to specific counts, we denied the motion. *See, United States v. Larson*, 507 F.2d 385, 389 (9th Cir. 1974). We did, however, state at the time that we would permit defendant Thrower's counsel to submit the type of jury instructions which he considered necessary under the circumstances of this case; we specifically stated that we would permit the motion to be renewed at a later time, if necessary to protect his client's interests. (Notes of Testimony, February 8, 1977, pp. 5–6)

Subsequent to our denial of the motion, defendant Thrower waived his right to a jury trial; the Government did not object and, accordingly, the case was tried without a jury. Since the basis for the motion had been the alleged inability of a jury to compartmentalize evidence, Thrower's own decision to be tried by the Court deprives him of any claim that our denial of that motion in any way prejudiced him.

3. In his post-trial motion, Thrower alleged the following: (1) the verdict was contrary to the evidence; (2) the verdict was contrary to the weight of the evidence; and (3) the verdict was contrary to law. We reaffirm our prior rejection of these bald and conclusory allegations. Although we have again reviewed the entire record, we still find no support for defendant's contentions, and we see no need to expand upon our Memorandum and Order of April 21, 1977.

That Memorandum and Order, although part of the record, are not published; accordingly, we will annex them to this Opinion as Appendix A and make them part hereof.

We found that defendant Thrower had engaged in a series of methamphetamine transactions with a federal undercover officer, on May 25, 1976, and May 26, 1976. During the course of those two days, Thrower used a certain Cadillac automobile for transportation of the methamphetamine; on several occasions, including one, just moments before his arrest on May 26, at the 30th Street Amtrak Railroad station in Philadelphia, federal agents observed Thrower depositing methamphetamine in the trunk of the Cadillac. Thrower was arrested inside the main building, where he was expecting payment for methamphetamine previously distributed to the federal undercover officer. At the time of Thrower's arrest, the Cadillac—occupied by defendant Alexander—was illegally parked outside the station, in broad daylight, in a traffic lane in which parking was forbidden; other vehicles and pedestrians were in the immediate vicinity.

Federal agents, with knowledge that: (a) the trunk of the Cadillac contained methamphetamine and (b) the car had been used by Thrower in connection with the methamphetamine transactions of May 25 and May 26, 1976, promptly arrested Alexander and seized the Cadillac. Testimony at the suppression hearing established that the agents believed that the Cadillac was subject to forfeiture under federal law. Agents then took the Cadillac to D.E.A. headquarters; the car was searched later the same afternoon; the fruits of that search yielded the methamphetamine and drug paraphernalia which Thrower sought to have suppressed on Fourth Amendment grounds.

Thrower, following his arrest, was transported to D.E.A. headquarters, where federal agents searched his person, as a matter of standard procedure, as soon as he arrived in the cellblock. This search occurred approximately one half hour to forty-five minutes after Thrower's arrest at the train station. During the search, agents found a manilla-type envelope in Thrower's pants pocket; this envelope contained approximately $2500 in cash, of which $1800 matched certain D.E.A. advance money the undercover agent had paid to Thrower on May 25, 1977.

No warrant was obtained prior to seizing the Cadillac automobile, nor was any warrant obtained prior to searching that car, once it had been transported to D.E.A. Headquarters. The search of Thrower's person, conducted upon his arrival at D.E.A. headquarters, was also performed without any search warrant.

Based upon the findings of fact which we made of record on March 9, 1977, we concluded that the Motion to Suppress should be denied. An extensive discussion of the legal issues raised by defendant's motion can be found in the record, pages I–12 through I–20, Notes of Testimony, March 9, 1977. We have re-examined our ruling, and we have concluded that the result is a proper one. The reasons in support of our denial of Thrower's Motion to Suppress may be briefly summarized as follows:

*A. The Seizure, and Subsequent Search, of the Cadillac Automobile Were Lawful and Constitutional.*

The initial seizure of the Cadillac was authorized by 21 U.S.C. § 881, the forfeiture provision contained in the federal drug laws.[4] Vehicles used in any manner to facilitate the transportation, sale, receipt, pos-

---

4. Although the Government has argued that seizure of the car was authorized by 49 U.S.C. § 782, we have concluded that 21 U.S.C. § 881 is the appropriate forfeiture provision in this case. We recognize that the Contraband Seizure Act, 49 U.S.C. § 781 *et seq.*, provides for the seizure and forfeiture of vehicles used to transport contraband articles. However, that statute defines "contraband article" as meaning, *inter alia*, "any narcotic drug." 49 U.S.C. § 781(b)(1). The statute makes no reference to non-narcotic controlled substances, and the statutory definition of "narcotic drug", as set forth in 49 U.S.C. § 787(d), 21 U.S.C. § 802(16), does not include methamphetamine—a Schedule II, non-narcotic controlled substance.

Thus, probable cause to believe that the Cadillac contained methamphetamine would not appear to justify seizure under 49 U.S.C. § 782. *No such distinction is found in 21 U.S.C. § 881, which refers to "controlled substances" and encompasses non-narcotic as well as narcotic substances.*

session or concealment of controlled substances—such as methamphetamine, a Schedule II controlled substance—are subject to forfeiture. 21 U.S.C. § 881(a)(4). Federal agents may seize such vehicles, 21 U.S.C. § 881(b), and the seizures can be made without a warrant, when the seizure is incident to an arrest, 21 U.S.C. § 881(b)(1), or when there is probable cause to believe that the vehicle has been used in violation of the federal drug laws, 21 U.S.C. § 881(b)(4).

In this case, the findings of fact show that there was probable cause to justify the seizure of the Cadillac. The agents, based upon their own observations of May 25, 1976 and May 26, 1976, certainly had probable cause to believe the following: (1) the trunk of the Cadillac contained methamphetamine at the time of the seizure; (2) the Cadillac had been used, and was being used at the time of the seizure, to transport methamphetamine; (3) the Cadillac had been used, and was being used at the time of the seizure, to facilitate the transportation, possession, and sale of methamphetamine; and (4) the Cadillac had been used, and was being used, in violation of the federal statutes relating to controlled substances. Probable cause of this nature certainly justified the warrantless seizure of the Cadillac, pursuant to 21 U.S.C. § 881(b)(4). In addition, since the seizure of the car occurred immediately after the driver, Alexander, had been arrested, the seizure could also be viewed as one made incident to an arrest, pursuant to 21 U.S.C. § 881(b)(1). In this particular case, therefore, no warrant was necessary to seize the Cadillac. *United States v. Rich*, 518 F.2d 980, 989 (8th Cir. 1975); *United States v. One 1971 Porsche Coupe*, 364 F.Supp. 745, 749 (E.D.Pa.1973).[5]

Although 21 U.S.C. § 881 permits the warrantless seizure of an automobile, when an agent has probable cause to believe that the automobile is being used in violation of federal drug laws, or when the seizure is incident to an arrest, we question whether the Congress can legislate such a statutory exception to the Fourth Amendment's warrant requirement. The statute cannot overrule constitutionally mandated standards.[6] The seizure of the Cadillac, in the instant case, without a warrant, however, can be justified under the "automobile exception" to the Fourth Amendment's warrant requirement. This exception, which has been carefully carved out by the Supreme Court since its initial decision over fifty years ago, permits warrantless searches, and seizures of automobiles, provided that agents have probable cause for the search or seizure, and further provided that "exigent circumstances" are present. *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971).

Probable cause to support the seizure of the Cadillac clearly existed. Moreover, as per our findings of fact, there were indeed "exigent circumstances" to support the seizure. The Third Circuit views "exigent circumstances" as a matter to be determined by the "reality of the circumstanc-

---

5. Analogous cases decided under the Contraband Seizure Act, 49 U.S.C. § 781 *et seq.*, support warrantless seizures of automobiles, when law enforcement officers have probable cause to believe that the vehicles are subject to forfeiture. *See, e. g., United States v. LaVecchia*, 513 F.2d 1210 (2d Cir. 1975), and *United States v. Troiano*, 365 F.2d 416, 418 (3d Cir. 1966), *cert. denied*, 385 U.S. 958, 87 S.Ct. 396, 17 L.Ed.2d 303 (1966).

6. The Ninth Circuit, for example, has held that probable cause alone will not justify a warrantless seizure of an automobile under 49 U.S.C. § 782; the seizure must be independently justified by an exception to the warrant requirement of the Fourth Amendment. *United States v. McCormick*, 502 F.2d 281, 285 (9th Cir. 1974); *accord, United States v. Karp*, 508 F.2d 1122, 1125 (9th Cir. 1974).

Other circuits, however, have held that probable cause is the only prerequisite to a seizure under § 782. *See, e. g., United States v. Zaicek*, 519 F.2d 412, 414 (2d Cir. 1975); *United States v. LaVecchia*, 513 F.2d 1210 (2d Cir. 1975); *United States v. Capra*, 501 F.2d 267 (2d Cir. 1974), *cert. denied*, 420 U.S. 990, 95 S.Ct. 1424, 43 L.Ed.2d 670 (1975).

es" in each particular case. *United States v. Menke*, 468 F.2d 20 (3d Cir. 1972). Here, the "reality of the circumstances" demonstrates the following unequivocally: (1) the car was standing in a traffic lane outside the station in broad daylight, in an area in which there were both other traffic vehicles and the presence of pedestrians; (2) the car was known to contain controlled substances, since federal agents had observed defendant Thrower put methamphetamine in the trunk of the car shortly before the seizure; and (3) the agents had kept the car under surveillance while Thrower was arrested inside the building itself. Such facts clearly rise to the level of "exigent circumstances". *See, e. g., United States v. Menke, supra*, 468 F.2d at 23.[7]

Thus, we conclude that the seizure of the Cadillac was lawful, not merely because the seizure was authorized by the forfeiture statute, 21 U.S.C. § 881, but also because the seizure falls well within the ambit of the "automobile exception" to the Fourth Amendment's warrant requirement.

■■■■ Positing, as we do, the Constitutional propriety of the initial seizure of the Cadillac, we have no difficulty in upholding the subsequent validity of the search of the vehicle conducted that same afternoon at D.E.A. Headquarters. When a vehicle has been lawfully seized pursuant to the forfeiture statute applicable to cases involving controlled substances, 21 U.S.C. § 881, a later search of that vehicle can be conducted without obtaining a warrant. *O'Reilly v. United States*, 486 F.2d 208 (8th Cir. 1973), *cert. denied*, 414 U.S. 1043, 94 S.Ct. 546, 38 L.Ed.2d 334 (1973). A subsequent warrantless search of an automobile does not violate the Fourth Amendment, when the car

has been seized pursuant to a forfeiture statute. *Cooper v. California*, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967); *United States v. Zaicek*, 519 F.2d 412 (2d Cir. 1975); *United States v. McCormick*, 502 F.2d 281 (9th Cir. 1974); *United States v. White*, 488 F.2d 563 (6th Cir. 1973). Therefore, the search of the Cadillac was "reasonable" under Fourth Amendment standards; the evidence which that search yielded was properly admissible, and, accordingly we denied defendant Thrower's motion to suppress that evidence.

■■ Even apart from cases decided under the forfeiture statutes, the subsequent warrantless search of the Cadillac was clearly permissible under the Fourth Amendment. Since both *probable cause* and *exigent circumstances* existed at the time the Cadillac was seized, a search of the automobile at that time would have been constitutionally permissible; that result is not altered because the agents, in light of the situation confronting them, chose to wait and conduct the search at the detention center. *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970). This aspect of the *Chambers* rule has been approved by the Third Circuit: "Where the police may seize a car without a warrant, they may conduct a warrantless search on the street, or even subsequently at the stationhouse." *United States v. Vento*, 533 F.2d 838, 866 (3d Cir. 1976). *See also, Texas v. White*, 423 U.S. 67, 96 S.Ct. 304, 46 L.Ed.2d 209 (1975).

In the recent case of *United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977), the Supreme Court not-

---

7. The Defendant attempted to establish that the federal agents knew that the Cadillac would be used by him on May 26, 1976, in a prearranged drug transaction, and that the agents, therefore, should have obtained a warrant prior to seizing the automobile. The testimony adduced at the suppression hearing, however, did *not* establish that the agents should realistically have anticipated that the Cadillac would be used by Thrower on May 26, 1976; in fact, the record revealed that, although agents had first observed the Cadillac

during the events of May 25, 1976, they did not know that the same car would again be used by Thrower on May 26.

Accordingly, we conclude that the failure to obtain the warrant, under such circumstances, was reasonable. *See United States v. Vento*, 533 F.2d 838, 865–866 (3d Cir. 1976). The record does not support the conclusion that the agents attempted to evade the warrant requirement, nor that they attempted to exploit predictable "exigent circumstances." *See, United States v. Chuke*, 554 F.2d 260 (6th Cir. 1977).

ed that the "fundamental inquiry in considering Fourth Amendment issues is whether or not a search or seizure is reasonable under all the circumstances." *Id.*, 97 S.Ct. at 2482. The *Chadwick* court, in explaining the breadth of the "automobile exception" to the Fourth Amendment warrant requirement, stressed the "diminished expectation of privacy which surrounds the automobile." [8] Viewing *Chadwick* as a reaffirmation of the continuing vitality of the "automobile exception" we have no difficulty in concluding that the seizure and subsequent search of the Cadillac in the present case fell well within the bounds of reasonableness.

### B. The Search of Defendant Thrower's Person Was Lawful and Constitutional.

The search of defendant Thrower, which was conducted at D.E.A. Headquarters shortly after Thrower's arrest at the train station, was a constitutional search; the evidence obtained—the envelope and $1,800 of marked money—was secured in a manner which is consistent with Fourth Amendment requirements, even though the search was performed without a warrant. De-

fendant's Motion to Suppress, with respect to this evidence, was properly denied.

■ We note, initially, that Defendant Thrower did not raise any issue as to the validity of his arrest; we have concluded, in any event, that the arrest, which occurred at the train station on May 26, 1976, was clearly lawful. Consequently, a search of this defendant's person, for evidence of the crime, could lawfully have been carried out at the time and place of the arrest; that kind of search is permitted as a search incident to arrest, under the doctrine of *United States v. Robinson*, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973), and *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969).

■ The fact that the search and seizure did not take place until after Thrower's arrival at the place of detention (less than one hour after his initial arrest at the train station), is of no constitutional significance. Such a case is controlled by *United States v. Edwards*, 415 U.S. 800, 94 S.Ct. 1234, 39 L.Ed.2d 771 (1974): "It is also plain that searches and seizures that could be made on the spot at the time of arrest may legally be conducted later when the accused arrives at the place of detention." 415 U.S.

---

**8.** "It is true that, like the footlocker in issue here, automobiles are 'effects' under the Fourth Amendment; and searches and seizures of automobiles are therefore subject to the constitutional standard of reasonableness. But this Court has recognized significant differences between motor vehicles and other property which permit warrantless searches of automobiles in circumstances in which warrantless searches would not be reasonable in other contexts. *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); *Preston v. United States*, 376 U.S. 364 at 366–367, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964); *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970). See also *South Dakota v. Opperman*, 428 U.S. 364 at 367, 96 S.Ct. 3092, 49 L.Ed.2d 1000.

"Our treatment of automobiles has been based in part on their inherent mobility, which often makes obtaining a judicial warrant impracticable. Nevertheless, we have also sustained 'warrantless searches of vehicles . . . in cases in which the possibilities of the vehicle's being removed or evidence in it destroyed were remote, if not non-existent.' *Cady v. Dombrowski*, 413 U.S. 433, 441–442, 93 S.Ct.

2523, 37 L.Ed.2d 706 (1973); *accord, South Dakota v. Opperman, supra*, 428 U.S. at 367, 96 S.Ct. 3092; *see Texas v. White*, 423 U.S. 67, 96 S.Ct. 304, 46 L.Ed.2d 209 (1975); *Chambers v. Maroney, supra; Cooper v. California*, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967).

"The answer lies in the diminished expectation of privacy which surrounds the automobile . . . ." *United States v. Chadwick*, 433 U.S. 1, 12, 97 S.Ct. 2476, 2484, 53 L.Ed.2d 538 (1977).

See also the dissenting opinion of Mr. Justice Blackmun:

"A second series of decisions concerns the consequences of custodial arrest of a person driving an automobile. The car may be impounded and, with probable cause, its contents (including locked compartments) *subsequently examined without a warrant. Texas v. White*, 423 U.S. 67, 96 S.Ct. 304, 46 L.Ed.2d 209 (1975); *Cady v. Dombrowski*, 413 U.S. 433, 439–448, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973); *Chambers v. Maroney*, 399 U.S. 42, 47–52, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970)." *United States v. Chadwick, supra*, 433 U.S. at 18, 97 S.Ct. at 2487, Blackmun, J. dissenting) (emphasis added).

at 803, 94 S.Ct. at 1237.[9] We hold that the search of Thrower's person, conducted at D.E.A. headquarters shortly after a valid custodial arrest, did not violate his Fourth Amendment rights, and that evidence discovered during the course of that search need not have been suppressed at trial.

## III. *CONCLUSION*

Based upon the entire record in this matter, and for the reasons set forth in this opinion, we are fully satisfied that denial of Defendant Thrower's Motion to Suppress was the proper course in this case. We reaffirm our denial of that Motion, as well as our disposition of Thrower's Motion for a Bill of Particulars, his Motion to Compel Election of Counts, and his post-trial Motion for New Trial and/or Arrest of Judgment.

APPENDIX A

APRIL 21, 1977.

FOGEL, District Judge.

Following a nonjury trial, we found the defendant, Emmett Thrower, guilty of two counts of distribution of methamphetamine, a Schedule II controlled substance; one count of possession of methamphetamine with intent to distribute; and one count of conspiracy to distribute methamphetamine, in violation of 21 U.S.C. §§ 841, 846.

Defendant has now filed a timely Motion for New Trial and/or Arrest of Judgment, on the following grounds: (1) the verdict is contrary to the evidence; (2) the verdict is contrary to the weight of the evidence; and (3) the verdict is contrary to law. In response, the Government states that our verdict was proper and in accordance with the law.

Having carefully considered the issues presented by defendant's Motion, we conclude that the Motion should and will be denied; our reasons follow.

## I. *Procedural History of the Case.*

Defendant Thrower was indicted on October 12, 1976, along with two codefendants, Vera Davis and Charles Thomas Alexander. Thrower was charged in four of the seven counts set forth in the Indictment, as follows: In Count II, with distribution of methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1); in Count III, with distribution of methamphetamine, in violation of 21 U.S.C. § 841(a)(1); in Count V, with possession with intent to distribute methamphetamine, in violation of 21 U.S.C. § 841(a)(1); and in Count VII, with conspiracy to distribute methamphetamine, in violation of 21 U.S.C. §§ 841, 846.

Defendant Thrower filed three pretrial motions; *first*, a Motion for A Bill of Particulars; *second*, a Motion to Compel Election Between Substantive Counts and the Conspiracy Count; and *third*, a Motion to Suppress Evidence. In addition, the Government filed a Motion for the Use of Tape Recordings and Transcripts of Consensually Monitored Conversations. On February 8, 1977, we heard argument on the pending motions, and we held a factual hearing as to the issues raised by defendant's Motion to Suppress Evidence. At that time, we denied defendant's Motion to Compel Election Between Substantive Counts and the Conspiracy Count; we also denied defendant's Motion for A Bill of Particulars, when defendant's counsel agreed to the elimination of that issue as a result of the Government's responsive letter to him of December 15, 1977, which gave defendant the information he was seeking.

The Motion to Suppress was directed at the alleged illegality of searches and seizures occurring on May 26, 1976. Specifically, defendant challenged the admissibility of methamphetamine and drug paraphernalia taken from a Cadillac automobile by Government agents, and the admissibility

---

9. *See also, United States v. Chadwick, supra* 433 U.S. at 18, 97 S.Ct. at 2487 (Blackmun, J. dissenting) ("a search of personal effects need not be contemporaneous with the arrest, and indeed may be delayed a number of hours while the suspect remains in lawful custody," citing *United States v. Edwards*).

of money seized from the defendant's person following his arrest. The Government offered testimony at the hearing held on February 8, 1977, from federal drug agents as to the events of May 25 and May 26, 1976, with respect to the seizure of the evidence in question. We took the defendant's Motion to Suppress under advisement, and invited further briefing from the Government and the defendant. We also reserved our decision on the Government's Motion for the Use of Tape Recordings and Transcripts of Consensually Monitored Conversations, pending further briefing by counsel.

On March 9, 1977, shortly before trial was to commence, one of the codefendants, Vera Davis, changed her plea to guilty. On that day, we entered our Findings of Fact, as to the issues raised by defendant Thrower's Motion to Suppress Evidence; the motion was denied; (our Findings, and our legal conclusions, can be found in the record of the March 9, 1977 proceedings). We also ruled that the Government's Motion for the Use of Tape Recordings and Transcripts of Consensually Monitored Conversations would be marked "Withdrawn", pursuant to the Government's request. Thus, the only pretrial motions which required adjudication were the suppression motion, and the motion for election of counts.

Defendant Thrower, along with his remaining codefendant, Charles Alexander, waived a jury trial, and the joint trial of Thrower and Alexander commenced March 9, 1977. Thereafter, on March 11, 1977, this Court found defendant Thrower guilty of the offenses charged in Counts II, III, V, and VII of the Indictment. (His codefendant, Alexander, was found guilty of aiding and abetting the distribution of methamphetamine, as charged in Count IV, in violation of 18 U.S.C. § 2, 21 U.S.C. § 841, and guilty of possession of methamphetamine, as charged in Count VI, in violation of 21 U.S.C. § 844(a); he was acquitted of the offense charged in Count V—possession with intent to distribute methamphetamine, 21 U.S.C. § 841, and of the offense charged in Count VII—conspiracy to distribute methamphetamine, 21 U.S.C. §§ 841, 846.)

Our finding as to Thrower and Alexander was a general one, in light of the statement of their counsel that they did not wish to submit, or ask us to make, specific findings of fact. Fed.R.Crim.P. 23(c).

## II. Disposition of the Pending Motion.

In his Motion for New Trial and/or Arrest of Judgment, defendant Thrower raises three grounds which can only be classified as a bald and conclusory attack upon the Court's findings of guilt. No *specific* error is alleged, nor has defendant made any attempt to analyze for us the factual or legal bases for the contention that the evidence cannot sustain a conviction on the counts noted; nor has a memorandum of law been submitted in support of this motion.

Nevertheless, we have given defendant's motion careful consideration. The Government's evidence against Emmett Thrower was, to say the least, overwhelming. Federal drug agents testified extensively and convincingly, with respect to Thrower's activities on May 25 and May 26, 1976, the days of the offenses; the physical evidence against defendant was ironclad. Based upon all of the evidence and the testimony produced at trial, we reaffirm our conclusion that defendant Thrower was guilty beyond all reasonable doubt, of the offenses alleged in Counts II, III, V, and VII of the Indictment. As to each of those offenses, the Government clearly established each of the essential elements of the offenses both factually and legally; and indeed more than met the requisite burden of proof.

Accordingly, defendant's Motion for New Trial and/or Arrest of Judgment will be denied. An appropriate Order will be entered.

## ORDER

AND NOW, this 21st day of April, 1977, upon consideration of the following: (1) defendant Thrower's Motion for New Trial and/or Arrest of Judgment; (2) the Government's Answer to Defendant's Motion; and for the reasons set forth in the accompanying Memorandum,

IT IS HEREBY ORDERED that defendant Thrower's Motion for New Trial and/or Arrest of Judgment be, and the same hereby is, DENIED.